IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:17-CR-00398-H1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM IN SUPPORT OF |
| ) | DEFENDANT'S PRO SE MOTION FOR |
| ) | COMPASSIONATE RELEASE |
| ROBERT EDMOND JR. ) | |
| ) | |
| Defendant. ) | |

Mr. Robert Edmond Jr., via undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his immediate vulnerability to COVID-19 while detained with multiple extremely high-risk, chronic medical conditions and the fact that his minor children can no longer be cared for by his mother because of her rapidly declining health. As verified herein and also attached to said Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Edmond Jr. has properly exhausted his administrative remedies by filing his release request with the Warden on August 18, 2020. *See Exhibit A: Exhaustion of Administrative Remedies.* As of the filing of this memorandum, Mr. Edmond Jr. has not received a response from the Warden. Thus, this matter is ripe for adjudication by this Honorable Court.

Mr. Edmond Jr. is forty-six (46) years old and suffers from High Blood Pressure (Hypertension), and chronic lung issues stemming from being in a house fire. *See Exhibit B: BOP Medical Records*. Mr. Edmond Jr. requires Spironolactone daily to treat his hypertension and blood pressure conditions. *See Exhibit B*.

Upon information from Mr. Edmond Jr., the facility is failing to control the spread of the Coronavirus and the facility has had around a couple hundred active cases of this pandemic disease. Mr. Edmond Jr. is in custody at FMC Butner Medium 1, a medium security facility in Butner, North Carolina. Staff members and inmates have already been infected with COVID-19 at FMC Butner. (*See* https://www.bop.gov/coronavirus/ wherein the public is provided a "snap shot" of one time, which clearly is subject to deteriorating conditions and an increasing hazard of airborne disease from moment to moment.) FMC Butner Medium 1 has already had (9) nine inmate deaths due to the Coronavirus. This pandemic is unnecessarily ravaging the BOP and FMC Butner Medium is just one example of such.

Most judges from the Eastern District of North Carolina, have granted Compassionate Release Requests. Compassionate Release is appropriate in a case like Mr. Edmond Jr. as a form of legally-sanctioned mercy due to the dire circumstances that both he and his children are currently facing. Thus, it is respectfully requested that this Honorable Court issue an order reducing Mr. Edmond Jr. sentence to time served and/or home confinement. For example, *see United States v. Roberto Pablo Gutierrez*, Crim. No. 5:11-CR-149-1-BR, ECF No. 156 (E.D.N.C. April 30, 2020).

**STATEMENT OF FACTS**

On December 12, 2017, Robert Edmond Jr. was indicted in the Eastern District of North Carolina on two counts. Count 1 charged him with possession with the intent to distribute a quantity of cocaine and a quantity of marijuana in violation of 21 U.S.C § 841 (a)(1) on February 10, 2017. Count 2 charged Mr. Edmond Jr. with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C § 924 (c)(1)(A)(i). PSR at page 3 ¶ 1. On June 13, 2018, this Honorable Court sentenced Mr. Edmond Jr. to (60) sixty months imprisonment and a term of

five years supervised release. Mr. Edmond Jr. has served a majority of his sentence and his projected release date is February 28th, 2022.

The current COVID-19 outbreak has not been contained in the United States and certainly and sadly not within our prison walls either. On August 18, 2020 Mr. Edmond Jr. filed his Compassionate Release request with the warden and has yet to receive a response. Although prior to that he filed his Pro Se Motion for Compassionate Release, it was due to the fact that he was unaware of how to proceed under these stressful and unique circumstances; however, once he was made aware of how to properly proceed, he promptly did so and still to date he has not received a response. *See* D.E. 42. This further verifies how pursuing his compassionate release through the warden would have been futile given how his request has simply gone ignored. Thus, it is respectfully submitted that this Honorable Court find that he has satisfactorily pursued his administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A) *See Exhibit A: Exhaustion of Administrative Remedies*. Accordingly, it is respectfully submitted that it is appropriate under these urgent circumstances for this Honorable Court not to strictly construe the administrative exhaustion requirement in the case sub judice and as such, find that he has in fact exhausted his administrative remedies. *See Haines v. Kerner*, 404 U.S 519, 520 (1972).

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an

equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Mr. Edmond Jr. is unfortunately extremely vulnerable to hospitalization and even death now due to his multiple high-risk conditions. *See* Current CDC Determinations of High Risk Conditions: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Mr. Edmond Jr.'s request for compassionate release qualifies under the guidelines as extraordinary and compelling reasons. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when

The defendant is—

(I) suffering from a serious physical or medical condition;
(II) suffering from a serious functional or cognitive impairment; or
(III) experiencing deteriorating physical or mental health because of the aging

> process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Edmond Jr.'s "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. *See* BOP Program Statement 5050.49. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing

history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

## ARGUMENT

Medical professionals within our country and around the world for that matter have deemed Mr. Edmond Jr.'s vulnerability to COVID-19 as being placed in the high-risk category of likely not being able to survive the Coronavirus due to his history of chronic medical problems. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. This constitutes "extraordinary and compelling reasons" for relief. Mr. Edmond Jr.'s underlying medical conditions make him especially vulnerable to COVID-19, constituting

"extraordinary and compelling reasons" for relief. His release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to Mr. Edmond Jr. posed by COVID-19 warrants relief. Moreover, Mr. Edmond Jr.'s two sons have been in the custody of Mr. Edmond's mother. As Ms. Whitehead[1] explains in her affidavit, Mr. Edmond Jr.'s two sons, who are (8) eight and (9) nine years old, can no longer be cared for by his mother because of her deteriorating health and they desperately need their father to be released to care for them. *See Exhibit C, Letters and Affidavits from family members supporting Mr. Edmond Jr.'s Compassionate Release.* This demonstrates additional "extraordinary and compelling reasons" in Mr. Whitehead's case for his immediate Compassionate Release to be granted.

**A. This Honorable Court has the authority to determine that Mr. Edmond Jr.'s vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.**

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. Courts have used their wise and appropriate discretion to provide defendants with relief under § 3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125, page 5 (E.D.N.C. April 14, 2020), citing *United States v. Mauma*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (listing cases holding same).

---

[1] Kimberly Whitehead is currently employed by the Federal Public Defender's Office in the Eastern District of North Carolina and has an upstanding reputation both in and outside of the legal community. She is also Mr. Edmond Jr.'s cousin and as such, is in the unique position to share her credible opinion and thoughts with this Honorable Court regarding this important matter.

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in their sentences under the compassionate release statute. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside the necessary love of your family, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate because of his or her unfortunate medical diseases and concerns or simply due to the fact that COVID-19 is running rampant across our federal prison system leading to unnecessary suffering and death amongst the inmates therein. Some of these cases are cited below to identify the range of which Federal Courts across the country are granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. White*, No. 2:17-CR-00198-4, <u>2020 WL 3244122, at *6</u> (S.D.W. Va. June 12, 2020) (Compassionate release granted to a defendant who was immunocompromised— suffering from a liver disease, Hepatitis C). *See also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 23, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19");

- *United States v. Copeland*, No. 1:03-cr-01120-FB-1, 2020 WL 2537250 (E.D. N.Y. May 19, 2020) (Motion for compassionate release granted where defendant "has long battled chronic Hepatitis C…") (emphasis added);

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020) (finding defendant had demonstrated extraordinary and compelling circumstances for relief because he "suffers from various severe ailments," including a life-threatening disease, kidney failure requiring dialysis three times a week, and recurrent bouts of pneumonia, "that cumulatively make his continued confinement especially dangerous in light of COVID-19.")

- *United States v. Hansen*, No. 17-cr-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020) ("[T]he Court cannot discount the risk to Hansen if he contracts coronavirus, as reliable information places him in a higher-risk category. Specifically, the presentence report documents that he suffers from diabetes, hypertension, high cholesterol, kidney disease, and chronic obstructive pulmonary disease, all of which are confirmed risk factors for serious illness if one contracts coronavirus.")

- *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21 months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases);

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This pandemic, as applied to

Mr. Edmond Jr. with his current chronic illness and lack of recommended treatment, and how his two young boys now desperately need him present an "extraordinary and compelling circumstance".

**B. Mr. Edmond Jr.'s Dire Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduction in Sentence.**

The Centers for Disease Control have identified several factors that put individuals at higher risk for severe illness. "People of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19." CDC, *What to know about liver disease and COVID*. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html. Those underlying conditions include High Blood Pressure; Severe Asthma and in the case of Mr. Edmond, the severe smoke inhalation of his house fire in May 2014 where he presented with lung nodules due to the carbon monoxide poisoning.

While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the below graph demonstrates.



Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[2] Mr. Edmond Jr. is exactly the type of individual deserving of compassionate release: he is at risk of severe illness and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

**C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Edmond Jr.'s Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.**

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Edmond Jr.'s compromised physical health, and the unique danger of contracting COVID-19, when combined with the other Section 3553(a) sentencing factors, warrant immediate relief. His Compassionate Release Request is further strengthened due to the fact that his two sons desperately need him because their caregiver, Mr. Edmond Jr.'s mother, can no longer properly care for them. Accordingly, his unique and dire situation, in its entirety, establishes how his case is appropriate for compassionate release.

---

[2] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf*. The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf*.

Mr. Edmond Jr. has been taking classes at Butner Medium 1 since the beginning of his incarceration. Mr. Edmond Jr. has had no incident reports or disciplinary actions against him. He does not have a have a history of violent behavior and his crimes do not involve minors. *See Exhibit B*. Release at this time would promote respect for the law because Mr. Edmond Jr. has substantially served his sentence. On June 13, 2018, the court sentenced Mr. Edmond Jr. to 60 months imprisonment and five years supervised release [D.E. 120 at 1]. Mr. Edmond's projected release date is February 28, 2022. Alternatively, continuing a culture of mass incarceration and blind enforcement without regard to humanity or case-by-case analysis would not promote respect for the law.

A reduction or modification of Mr. Edmond Jr.'s sentence would not diminish the seriousness of the offense, nor would it place the public in any type of danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Edmond Jr., whose ability to engage in basic self-protective measures is restricted and thus, warrant relief. Additionally, Mr. Edmond Jr.'s two young boys are in desperate need of their father at this time because of how their caregiver can no longer stand in that position because of her worsening health.

Moreover, Mr. Edmond Jr. has an immediate release plan. He will be living with his elderly mother who was hospitalized earlier this year while taking care of his two sons. *See Exhibit C, Statements from Mr. Edmond Jr.'s family*. Mr. Edmond Jr.'s mother is suffering due to congestive heart failure, lungs and heart retaining fluid and the doctor attending to her has said that she can no longer live on her own or fully take care of her two grandsons, which makes it necessary for Mr. Edmond Jr. to take on the role of their and his mom's caregiver. *See Exhibit C*. Mr. Edmond Jr. has employment already once he is released with Russel Roadside Assistance.

Russel Joseph has agreed to employ Mr. Edmond Jr. at Russel Roadside Assistance. Ms. Kimberly Whitehead has also volunteered to take Mr. Edmond Jr. under her guidance and reestablish his relationship with the church. Mr. Edmond Jr. has two young boys of the ages of (8) eight and (9) mnine years old who are eager to keep building their relationship with their father at their vulnerable young age when he is released as well. Mr. Edmond Jr.'s siblings have declared the relationship between Mr. Edmond Jr.'s Mother and him very close, and that it would be vital for him to be able to spend the little time left the mother has with her son. Not only the relationships with his sons are important but the continuing support from Mr. Edmond Jr.'s family members show that he has a stable and reliable community that surround him providing the best circumstances for his compassionate release. *See Exhibit C.*

## CONCLUSION

It is respectfully submitted that Mr. Edmond Jr. has demonstrated extraordinary and compelling reasons for compassionate release and respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted, this the 23rd day of December 2020.

GUIRGUIS LAW, PA

/s/ Nardine Mary Guirguis
Nardine Mary Guirguis
PANEL Attorney
434 Fayetteville St., Suite 2140
Raleigh, North Carolina 27601
Telephone: (919) 832-0500
Facsimile: (919) 246-9500
nardine@guirguislaw.com

*Designation: CJA Appointed*

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States electronically at the following address:

>Matthew Lee Fesak
>Matthew.fesak@usdoj.gov
>150 Fayetteville Street, Suite 2100
>Raleigh, NC 27601

This 23rd day of December 2020

>GUIRGUIS LAW, PA
>
>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>PANEL Attorney